**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| AMY MAITZEN, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| CAROLYN W. COLVIN, Acting | * | No. 4:14CV00399-JJV |
| Commissioner, Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Amy Maitzen, appeals the final decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits under Title II of the Social Security Act and for supplemental security income benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.     BACKGROUND**

On August 4, 2009, Plaintiff protectively filed for benefits due to bipolar disorder and PTSD. (Tr. 219) An Administrative Law Judge ("ALJ") denied Plaintiff's claims in an October 24, 2011, decision, but the ruling was remanded by the Appeals Council. (Tr. 83-93, 100-102)

At Plaintiff's request, an ALJ held a hearing on March 15, 2013, where Plaintiff appeared with her lawyer. At the hearing, the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). (Tr. 57-75)

The ALJ issued a decision on April 8, 2013, finding that Plaintiff was not disabled under the Act. (Tr. 14-24) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 6-8)

1

Plaintiff, who was thirty-one years old at the time of the hearing, has a high school education and past relevant work experience as a cashier, paint booth operator, and fast food worker. (Tr. 63, 72)

## II.  DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

Plaintiff alleged disability since January 3, 2000, but the ALJ found that she had engaged in substantial gainful activity ("SGA") in 2003, 2004, and 2005. The ALJ determined that Plaintiff did not engage in SGA in 2000, 2001, 2002, 2006, 2007, 2008, 2009, 2011, and 2012, and she had the following severe impairments: bipolar disorder, anxiety disorder, and low back pain. (Tr. 16) However, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 17)

According to the ALJ, Plaintiff has the residual functional capacity ("RFC") to perform light, unskilled work, except that she cannot engage in frequent bending or crouching. She is limited to work where interpersonal contact is incidental to the work performed; supervision is simple, direct, and concrete; the complexity of one or two step tasks is learned and performed by rote with few variables and little judgment. She cannot deal with the general public and cannot perform work requiring frequent decision-making or frequent changes in the work setting. (Tr. 19) The VE testified that the jobs available with these limitations were production assembler and poultry

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2]420 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

2

deboner. (Tr. 73) Accordingly, the ALJ determined that Plaintiff could perform a significant number of jobs existing in the national economy, and found that she was not disabled.

## III.   ANALYSIS

### A.   Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.[3] Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion."[5]

### B.   Plaintiff's Argument for Reversal

Plaintiff asserts that the Commissioner's decision should be reversed because the ALJ (1) did not comply with the Appeals Council's remand order; (2) failed to develop the record; (3) did not give Dr. Oberlander's opinion adequate weight; (4) erroneously relied on Dr. Toombs's opinion; and (5) erred in the credibility determination. (Doc. No. 15)

#### 1.   Appeals Council

Plaintiff argues that the Appeals Council's remand directed the ALJ to "address Claimant's comments" regarding a post hearing exam by Dr. Toombs, but the ALJ "failed to subpoena Dr. Toombs as requested by Claimant and ordered by the Appeals Counsel." (Doc. No. 15) Contrary

---

[3] *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

[4] *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5] *Id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

3

to Plaintiff's assertion, the Appeals Council did not direct the ALJ to subpoena Dr. Toombs. Instead, it directed the ALJ to "[a]ddress the proffer[ed] comments submitted by the claimant's representative." (Tr. 101) On remand, the ALJ complied with this directive and had a hearing where Plaintiff responded to Dr. Toombs's findings. (Tr. 60-70) Ultimately, the fact that Dr. Toombs noted that Plaintiff could care for her child, and Plaintiff testified that she could not, makes no difference in light of the other evidence in the record.

   2. Record Development

Plaintiff contends that the ALJ erred because there are no medical records related to her "functional limitation stemming from her 'severe' impairment of back pain." (Doc. No. 15) She asserts that the "ALJ's RFC for lifting, standing, walking, and postural limitations is unsupported by any medical opinions." (*Id.*) Additionally, Plaintiff argues that the ALJ should have ordered a consultative examination because the "record contains no medical opinions" related to Plaintiff's physical limitations. (*Id.*)

First, Plaintiff provided no medical records to support her claim of disabling back pain. Though she briefly testified regarding her back pain, the mere fact that Plaintiff has back pain does not amount to a disability.[6] Second, "the regulations . . . do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment."[7] Third, Plaintiff neither mentioned back pain when she filled out her disability application nor when asked what impairments keep her from working. (Tr. 45, 219, 681) Fourth, Plaintiff has not sought continuing treatment for her back

---

[6]*Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996) ("While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability.").

[7]*Matthews v. Bowen*, 879 F.2d 422, 425 (8th Cir. 1989).

4

pain nor does she take any medications to control the pain.[8] Finally, if counsel was convinced that the back impairment was an issue that needed to be explored more, he could have brought it up at the hearing. Though an ALJ has the duty to develop the record, even when a claimant is represented by counsel, counsel is obliged to do more than sit by idly.

### 3. Dr. Oberlander

Plaintiff argues that the ALJ's RFC "does not adequately encompass Dr. Oberlander's opinions." At the June 2011 evaluation, Dr. Oberlander noted a "somewhat broad based gait with left-sided limp." He found that Plaintiff "could tandem, heel and toe walk but with difficulty. Romberg performed and was not observed." (Tr. 678) The ALJ recognized these observations, but he also pointed out that Dr. Oberlander found that Plaintiff "had normal bulk, strength, and tone in the extremities without atrophy or fasciculations." (Tr. 21) In fact, a month later, a different doctor noted "no abnormalities . . . in [Plaintiff's] posture or gait." (Tr. 680)

Other factors supported the ALJ's RFC finding. For example, Plaintiff testified that lifting was an issue only if she had to engage her back. (Tr. 43) Though Plaintiff testified that she can neither stand nor sit for long periods of time, she also testified that on at least one occasion she stood for 5.5 hours before taking a break.[9] (Tr. 42) Based on all the evidence, the ALJ found that the "symptoms are more intermittent and less severe than has been alleged." (Tr. 21) "While pain may

---

[8]*Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by considering multiple factors, including whether or not the claimant seeks regular medical treatment.).

[9]*Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996) (An ALJ weighs the credibility of a claimant's subjective complaints of pain by considering multiple factors, including daily activities, and may discredit complaints if they are "inconsistent with the evidence as a whole.").

be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability."[10]

### 4. Dr. Toombs

Plaintiff contends that the ALJ erred by giving any weight to Dr. Toombs's opinion because the opinion was given without consideration of records that were submitted later. First, it does not matter whether Dr. Toombs considered the later submitted records, so long as the ALJ considered them. Second, the ALJ gave the opinion only "some weight" and noted that the findings were not "controverted by a treating provider." (Tr. 22) Third, the ALJ noted that Dr. Toombs's findings were supported by the fact that Plaintiff had undergone only routine, conservative treatment and demonstrated improvement when she complied with her medications.[11] Accordingly, the ALJ did not err in giving some weight to Dr. Toombs's findings when considered with the other evidence in the record.

### 5. Credibility Determination

Despite Plaintiff's argument to the contrary, there is substantial evidence in the record to support the ALJ's credibility determination. The ALJ noted that Plaintiff worked after the alleged onset date and her "work history suggests that she can engage in sustained work activity consistent" with the RFC.[12] (Tr. 20) He also considered the fact that medications help her mental

---

[10]*Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996).

[11]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

[12]*Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity."); *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) ("[A] condition that was not disabling during working years and has not worsened cannot be used to prove present disability.").

6

impairments,[13] but she has repeated issues with compliance.[14] (Tr. 20, 400, 402, 405, 416, 431, 677, 681) For example, a note from April 2009 revealed that Plaintiff had not been seen for her mental impairments in eight months and was not participating in therapy.[15] (Tr. 406, 412) Though Plaintiff argues that her non-compliance is due to the inability to afford treatment and medications, she is a pack-a-day smoker, and has been for several years. (Tr. 51, 681, 682) Smoking is an expensive, ongoing habit that can be considered when weighing Plaintiff's credibility.[16]

The ALJ also noted that Plaintiff "did not originally allege that she is limited in the ability to work because of back pain."[17] (Tr. 21) Additionally, Plaintiff indicated that she sustained her back injury in 2008 or 2009, but she continued to work through 2012 – though not to an SGA level.[18] He also noted that Plaintiff sought no ongoing treatment for her back pain. In July 2001, when Dr. Toombs asked Plaintiff how she was disabled, she did not mention her back; she mentioned only "more of the anger stuff than the depression stuff." (Tr. 681) At the first hearing in May 2011,

---

[13]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

[14]*Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

[15]*Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by considering multiple factors, including whether or not the claimant seeks regular medical treatment.).

[16]*Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking three packs of cigarettes a day to help finance pain medication.").

[17]*Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (Among other things, ALJ may consider the fact that a claimant did not allege an impairment in his complaint when discounting claimant's allegations).

[18]*Krone v. Apfel*, 187 F.3d 642 (8th Cir. 1999) (finding that "despite some evidence of a possible mental impairment," the fact that claimant continued to work indicated that any impairment was not disabling).

when Plaintiff's counsel asked her why she felt she was unable to work, Plaintiff made no mention of her back issues. (Tr. 45) Furthermore, Plaintiff testified that she has not been treated for her sciatic pain. (Tr. 49) Finally, the ALJ considered Plaintiff's activities of daily living,[19] *e.g.*, at one point she lived by herself, she cooks, cleans, shops, does the laundry, pays the bills, feeds her animals, helps care for her daughter, and goes fishing. (Tr. 50, 684) While there may be some evidence that Plaintiff has limitations related to her impairments, the ALJ's finding that she could perform light, unskilled work with some limitations is supported by the record.[20]

## IV.   CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

THEREFORE, the Court affirms the final determination of the Commissioner and dismisses Plaintiff's Complaint with prejudice.

IT IS SO ORDERED this 10th day of February, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[19] *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996) (An ALJ weighs the credibility of a claimant's subjective complaints of pain by considering multiple factors, including daily activities, and may discredit complaints if they are "inconsistent with the evidence as a whole.").

[20] *Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.").